IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JESSE L. FARMER                                                                                    PLAINTIFF

v.                                            Civil No. 6:20-cv-06023

SERGEANT CHAD SORG                                                                          DEFENDANT

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Jesse L. Farmer, under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Defendant Chad Sorg. (ECF No. 25). Plaintiff has filed a Response. (ECF No. 29). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Division of Correction ("ADC") – Pine Bluff Unit.[1] His claims in this action against Defendant Sorg arise from alleged incidents that occurred during his incarceration in the ADC – Ouachita River Correctional Unit ("ORCU") in July of 2018.

According to Plaintiff, on July 14, 2018, Plaintiff was moved from one barracks, cell 112 to three barracks, cell 329 because some inmates in one barracks wanted to jump on him. (ECF No. 3, p. 10). While Plaintiff was in the cafeteria, an inmate brought Plaintiff's property downstairs and placed it at the front door of the barracks. *Id.* at p. 11. When Plaintiff returned

---

[1] The Arkansas Department of Correction was reorganized in 2019 to become the Arkansas Department of Corrections. The new Department is a Cabinet level department within the Arkansas State Government which includes the Division of Correction and the Division of Community Correction.

1

from eating, he found his property at the front door. *Id.*

Plaintiff told the correctional officers working the door that he did not put his property at the door. (ECF No. 25-3, p. 15). Plaintiff also stated the inmate in cell 329 told the correctional officers that he did not want Plaintiff as his cellmate. *Id.* at p. 16. The correctional officers then called Defendant Sorg and Plaintiff told him his cellmate had placed his property at the door. *Id.* at p. 11.

According to Plaintiff, Defendant Sorg gave him three warnings to go to his cell. (ECF No. 25-3, p. 11). Sorg then sent one of the correctional officers to talk to the Captain and, when the officer returned, it was decided that Plaintiff would go in the hole and receive a disciplinary. *Id.* at pp. 12, 15.

Plaintiff believes instead of issuing him a disciplinary and placing him in isolation, Defendant Sorg could have moved him to another barracks. (ECF No. 25-3, p. 20, 32). In addition, Plaintiff believes Defendant Sorg should have made the inmate in cell 329 accept him as a cellmate. *Id.* at p. 24. Plaintiff admits he was placed in isolation because the inmate in cell 329 did not want him as a cellmate. *Id.* at 20.

Plaintiff spent fifteen (15) days in isolation in a one-man cell. While in isolation, he had access to his property, a jumpsuit, a mattress and blanket, and a bathroom in his cell. (ECF No. 25-3, pp. 21, 33). After 15 days in isolation, Plaintiff was assigned to two barracks. *Id.* at p. 21.

According to Defendant Sorg's affidavit, on July 14, 2018, he was informed that Plaintiff was refusing to return to his cell. (ECF No. 25-4, p. 1). Shortly thereafter, he approached Plaintiff and gave him three direct orders to return to his assigned barracks. *Id.* Defendant Sorg also states Plaintiff told him he had been threatened by someone in his barracks and refused to return to his barracks. Defendant Sorg also states when he asked Plaintiff who was threatening him, Plaintiff

2

would not say who had threatened him. *Id.* at p. 2. Defendant Sorg states for Plaintiff's safety he had him placed in isolation. *Id.* Defendant Sorg also states he issued Plaintiff a disciplinary because inmates are issued disciplinaries anytime they refuse a direct order to return to their barracks. *Id.,* (ECF No. 25-5).

During the timeframe referenced in Plaintiff's Amended Complaint, Administrative Directive 14-16 was the ADC's Inmate Grievance Policy. (ECF No. 25-2). The grievance procedure provides inmates in the ADC's custody an administrative mechanism for the resolution of complaints, problems, and other issues. This policy informs inmates that the following issues are non-grievable: (1) parole; (2) release; (3) transfer; (4) job assignments unless in conflict with medical restrictions; (5) disciplinaries; (6) anticipated events. (7) matters beyond the control of the ADC; and (8) rejection of a publication. *Id.* at pp. 2-3. However, the policy goes on to state, "Note: Claims of Retaliation, even if related to an issue referenced above, are Grievable." *Id.* at p. 3. The policy also makes clear that inmates must specifically name each individual involved and fully exhaust their grievance prior to filing a lawsuit. *Id.*

Terri Grigsby Brown is the Inmate Grievance Supervisor for the ADC. Her job responsibilities include responding to non-medical inmate grievance appeals for the current and former ADC Chief Deputy Directors and Assistant-Directors. (ECF No. 25-1). To fully exhaust administrative remedies, inmates are required to timely file an informal resolution and a formal grievance at the unit level and a grievance appeal to the Assistant and/or Deputy Director's level as detailed in the ADC's inmate grievance policy. *Id.* at p. 6.

According to her affidavit, Ms. Brown reviewed the grievance appeal files for Plaintiff and reviewed his grievance history from July 14, 2018 through February 25, 2020 - the date his lawsuit was filed against Defendant Sorg. (ECF No. 25-1, p. 6). The search confirmed Plaintiff did not

file any grievances against Defendant Sorg pertaining to the claims in his lawsuit. *Id.* at p. 7. Ms. Brown goes on to state "because Inmate Farmer did not file any grievances naming Sergeant Sorg prior to filing his lawsuit, he failed to properly exhaust his administrative remedies against him as required by the ADC's inmate grievance policy. *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed the instant lawsuit on February 25, 2020. (ECF No.1). In response to this Court's orders, Plaintiff filed an Amended Complaint on March 5, 2020, (ECF No. 6), and a Second Amended Complaint on March 13, 2020. (ECF No. 10). Plaintiff names Chad Sorg, a Sergeant at the ORCU, as the only Defendant. *Id.* At the time of the alleged incident, Plaintiff was serving a sentence because of a state court criminal conviction. *Id.* at p. 3. He is suing Defendant Sorg in his individual and official capacities[2] and is seeking compensatory and punitive damages. *Id.* at pp. 4, 7.

Plaintiff describes his claim against Defendant Sorg as "endangerment to properly house prisoner, failure to follow policy and procedure." (ECF No. 10, p. 4). He goes on to state:

> On 7-14-18 Sgt. Sorg locked me up in isolation! Because I would not return back into the barracks where other inmates were threatening to cause harm to me if I stayed in the barracks Sgt. Sorg did not investigate this matter properly nor follow the policy and procedure. I was locked up in isolation for no reason for 15 days. I was not the threat I was being threatened.

*Id.* When asked to describe the custom or policy he believes caused the violation of his constitutional rights he states "AR-225 – Employee conduct." *Id.* at p. 5.

---

[2] In Plaintiff's Second Amended Complaint, in response to the question as to what capacity Plaintiff is suing Defendant Sorg, he indicated "official capacity only". (ECF No. 10, p. 4). However, in Plaintiff's first two complaints he stated he was suing Defendant Sorg in both his individual and official capacities. (ECF No. 1, p. 1 and ECF No. 6, p. 4). In addition, Defendant Sorg addresses both individual and official capacity claims in the instant Motion for Summary Judgment. (ECF No. 26).

4

On March 8, 2021, Defendant Sorg filed a summary judgment motion arguing he is entitled to summary judgment because: 1) sovereign immunity bars Plaintiff's claims for monetary relief from Defendant Sorg in his official capacity; 2) Plaintiff did not exhaust his administrative remedies against Defendant Sorg prior to filing his lawsuit; and 3) because Plaintiff fails to establish Defendant Sorg violated his constitutional rights, qualified immunity protects Plaintiff from claims in his individual capacity. (ECF No. 26

On March 29, 2021, Plaintiff filed a Response in opposition to Defendants' motion. (ECF No. 29). The response included an affidavit from Plaintiff in which he states:

> 1) July 2018 I was placed in isolation at the Malvern unit upon completion of my isolation custody time. The Malvern unit staff moved me housing #1 to cell #112 it was two inmates already living in cell #112 one inmate was unassigned. 2) I went to Sgt. Sorg and told him one of the inmates that was living in cell #112 was unassigned and refused to move – allow me to be in my assigned cell. I told Sgt. Sorg the inmate threatened me if I went and told correctional officers he was going to attack me Sgt. Sorg moved the inmate out of cell #112 the inmate came back cell #112 threatening me. 3) Correctional officers in the control booth watched me and the inmate have a major argument they came into the barracks and told me to pack my property and moved me out of cell #112 across the hall to Bks. #3 in housing area #1 to cell #329 Correctional officers never did anything to the inmate who was threatening me. 4) When I was move to #3 barrack cell #329 I put my personal property in the cell. Correctional officers called breakfast call, I went to breakfast when I came back the inmate who was living in the cell moved all my property out of the cell and set it by the barracks door. 5) The inmate in 3Bks cell #329 went and talked to correctional staff, staff came to me and locked me up for no reason. Lied on a disciplinary making it appear I refused to go into barracks #3 cell #329. (SEE) CAMERA Footage of July 2018.

*Id.* at p. 3. On April 1, 2021, Plaintiff filed a Motion to Supplement his Response. (ECF No. 34). On April 7, 2021, the Court granted Plaintiff's request to supplement. (ECF No. 35). In the Supplement Plaintiff repeats his statements previously made in his affidavit and provides the Court with the names of individuals he claims can testify as to how Plaintiff "has been harmed mentally and physically within the Prison system at the Malvern Unit." (ECF No. 34).

## III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce. v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

Defendant Sorg argues Plaintiff failed to exhaust his administrative remedies relating to his complaints against him before Plaintiff filed the instant lawsuit and consequently those claims are barred.

6

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

The summary judgment record confirms Plaintiff did not file any grievances against Defendant Sorg prior to filing the instant lawsuit. In addition, Plaintiff admits he did not present the facts relating to his complaint in the ADC's grievance procedure. (ECF No. 10, p. 2). However, he states he did not file a grievance because "I complied with the disciplinary appeal process." *Id.* Although Plaintiff has not alleged Defendant Sorg prevented him from utilizing the written grievance procedure or failed to comply with the procedure itself, the ADC's grievance

7

policy clearly states disciplinaries are "non-grievable". Consequently, the Court is hesitant to grant summary judgment in favor of Defendant Sorg based solely on Plaintiff's failure to file a grievance. Accordingly, I recommend Defendant's summary judgment motion based on Plaintiff's failure to exhaust his administrative remedies be denied.

### B. Failure to Investigate and Follow ADC Policy

Plaintiff claims Defendant Sorg failed to investigate his claims that inmates in his barracks were threatening him and that Sorg failed to follow ADC policy. He also states in his affidavit that Defendant Sorg "lied on a disciplinary making it appear I refused to go into barracks". Construing these claims liberally, the will also address whether Plaintiff's right to due process were violated.

First, Plaintiff does not have a statutory or constitutional right to an internal investigation of his claim that inmates in his barracks were threatening him. *Hutchison v. Flud,* Case No. 4:20-CV-1343-JM-BD, 2020 WL 7221554, *2 (E.D. Ark. Nov. 17, 2020) (stating there are no reported cases suggesting that a prisoner has a statutory or constitutional right to an internal investigation); *Barber v. Baker,* Case No. 3:20-CV-00336-KGB-JTR, 2020 WL 8372643, *2 (E.D. Ark. Nov. 3, 2020). It is also well settled, that internal ADC policies and procedures do not create constitutional rights and that a prison officials' failure to follow said policies and procedures will not give rise to a § 1983 claim. *Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir. 1996). Thus, Plaintiff cannot rely on Sorg's failure to investigate and failure to follow ADC policy as the basis for stating a constitutional claim against him.

In addition, Plaintiff's claim Defendant Sorg "lied on a disciplinary making it appear I refused to go into barracks" fails to state a constitutional claim. *See Daniels v. Ferguson*, 2008 WL 698485, *9 (W.D. Ark. March 13, 2008) ("To the extent Daniels contends his Due Process

8

rights were violated because the disciplinary charges were fabricated or the events simply never occurred, courts have held that a prisoner enjoys no constitutional guarantee to be free from false charges that may lead to punishment.") (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986) and *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983).

Finally, "[i]n order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). When deciding whether an individual was afforded procedural due process a court employs a two-step analysis. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989). First the court must determine whether the individual holds a protected liberty or property interest. *Id.* If the court finds a protected interest, the question becomes whether the state provided sufficient due process prior to depriving that individual of the protected interest. *Id.*

"To prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (alteration omitted) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate's liberty interests are limited to the nature of confinement and do not extend to procedural rules imposed by the state. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("If [the plaintiff] has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by the which the state believes it can best determine how he should be confined."); *see also Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir. 1993) (holding that "[p]rocedural guidelines, such as a mandatory hearing, are not enough to create a liberty interest").

Here, Plaintiff's fifteen days in isolation fails to give rise to a constitutional claim against Defendant Sorg. First, Plaintiff has not described any conditions of his confinement during the time he was in isolation to demonstrate he was subjected to a dramatic departure from the basic conditions of his confinement. Simply being placed in disciplinary segregation is not an "atypical and significant hardship…in relation to the ordinary incidents of prison life", *Sandin*, 515 U.S. at 484, and thus is not the type of deprivation that creates a protected liberty interest. *See Phillips*, 320 F.3d at 847 ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."). Therefore, Plaintiff has failed to identify any liberty interest that would require procedural due process. Plaintiff testified while he was in isolation he was housed in a one-man cell where he had access to his property; was provided a jumpsuit, mattress, and blanket; and had a bathroom in his cell.

Furthermore, Plaintiff was only subjected to these conditions for fifteen days. Courts have consistently held that periods of confinement longer than that experienced by Plaintiff were not atypical and significant hardships. See *Sandin,* 515 U.S. at 486 (no atypical and significant hardship where the inmate spent thirty days in segregate confinement); *Hemphill v. Delo,* 124 F.3d 208 (8th Cir. 1997) (unpublished) (four days locked in housing unit, 30 days in disciplinary segregation, and approximately 290 days in administrative segregation was not an atypical and significant hardship); *Kulhanek v. Griffin,* No. 4:17-CV-02431-JAR, 2020 WL 2747301, *5 (E.D. Mo. May 27, 2020) (twenty-one days in restrictive housing was not an atypical and significant hardship).

Because Plaintiff did not suffer an atypical and significant hardship, he fails to state a due process claim against Defendant Sorg. Accordingly, I recommend Defendant Sorg's motion for

summary judgment be granted with respect to Plaintiff's claims against him in his personal capacity.

### C. Official Capacity Claims

Plaintiff's official capacity claims against Defendant Sorg are also subject to dismissal. An official capacity claim against Defendant Sorg, an employee of the ADC, is essentially a claim against the State of Arkansas. "The Eleventh Amendment bars suits against a State by citizens of that same State in federal court." *Williams v. Missouri,* 973 F.2d 599, 599 -600 (8th Cir. 1992) *(citing Papasan v. Allain,* 478 U.S. 265, 276 (1986)). "This bar exists whether the relief sought is legal or equitable." *Id.* (*quoting Papasan*, 478 U.S. at 276). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991)(*citing Quern v. Jordan,* 440 U.S. 332, 342 (1979)). The State of Arkansas and its agencies have not consented to suit in federal court. Because Plaintiff requests only monetary damages, Plaintiff's claims against the State of Arkansas are barred by sovereign immunity.

Accordingly, Plaintiff's official capacity claims against Defendant Sorg fail as a matter of law and I recommend he be granted summary judgment. *Id.* [3]

### V. CONCLUSION

For the reasons stated above, I recommend Defendant Sorg's Motion for Summary Judgment (ECF No. 25) be **GRANTED** and all individual and official capacity claims against Defendant Sorg be **DISMISSED WITH PREJUDICE**.

---

[3] Because the Court has found Defendant Sorg did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 21st day of April 2021.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE